**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**WINSTON J. JACKSON** a/k/a
**THE ESTATE OF WINSTON J.
JACKSON**,

               Plaintiff,

                                      No. 14-CV-11073
vs.                              Hon. Gerald E. Rosen
                     Magistrate Judge Michael J. Hluchaniuk

**BANK OF AMERICA, N.A.,
SETERUS, INC.**, and **FEDERAL
NATIONAL MORTGAGE
ASSOCIATION**,

               Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

### I. INTRODUCTION

Plaintiff Winston K. Jackson (now deceased) commenced this suit, through

his estate, in Wayne County Circuit Court on January 6, 2013, asserting claims

against Defendants Bank of America, N.A.; Seterus, Inc.; and the Federal National

Mortgage Association, arising from the foreclosure sale of his home in Westland,

Michigan.  Plaintiff claims that Defendants initiated the foreclosure without

properly assisting him in negotiating a modification of his loan, in violation of

M.C.L. § 600.3205c (2011).  Defendants removed the case to this Court on March 13, 2013, and Defendants have now filed a Motion to Dismiss.[1]  Collectively, Defendants argue that (1) Plaintiff lacks standing to bring this suit because the statutory redemption period for the foreclosure has passed; and (2) Plaintiff has failed to sufficiently allege a violation of Michigan's loan modification laws.

Having reviewed and considered the parties' briefs and supporting documents and the entire record of this matter, the Court has determined that the pertinent allegations and legal arguments are sufficiently addressed in these materials and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide the parties' motions "on the briefs." See L.R. 7.1(f)(2).  This Opinion and Order sets forth the Court's ruling.

## II. PERTINENT FACTS

Plaintiff Winston K. Jackson and his now-ex-wife, Trenna Jackson, originally purchased the property at issue in this case, 30234 Julius Blvd., Westland, MI 48185 ("the Property"), for $60,000 in March 1994.  Pl's Compl., Ex. 1, Dkt. # 1-2.  In 2004, the Jacksons borrowed $82,000 from Quicken Loans, Inc. ("the Loan"), secured by a mortgage ("the Mortgage") against the Property.

---

[1] Defendant Bank of America, N.A. filed its own Motion to Dismiss, Dkt. # 11, while Defendants Seterus, Inc. and the Federal National Mortgage Association jointly filed a Motion to Dismiss, Dkt. # 13.  The Court collectively refers to the two motions as "Defendants' Motion to Dismiss."

2

Def. Seterus and Fannie Mae's Mot. to Dismiss, Ex. 2, Dkt. # 13-3. Mortgage Electronic Registrations Systems, Inc. ("MERS") served as the nominee for the lender, *id.*, and Bank of America, N.A. ("BANA"), was the servicer of the Mortgage, *see* Def. BANA's Mot. to Dismiss, Ex. C., Dkt. # 11-4.

The Jacksons apparently carried out the terms of the Mortgage for about 9 years. They divorced in 2011, and Mr. Jackson retained all rights to the Property.[2] On October 1, 2011, just over a year before Plaintiff's default on the loan, BANA transferred servicing of the Loan to Seterus, Inc., which serviced the Loan until the time of this litigation.[3] *Id.* Plaintiff passed away on January 3, 2013, and defaulted on the loan at some point in early 2013.[4] Pl.'s Resp. to Def.'s Mot. to Dismiss, Ex. A, Dkt. # 20-2. In response to the default, Seterus sent a letter, dated February 15, 2013, to Mr. Jackson, noticing the default.[5] Def. Seterus and Fannie Mae's Mot. to Dismiss, Ex. 5, Dkt. # 13-6. The letter informed Mr. Jackson that

---

[2] Plaintiff does not provide any supporting documentation of the divorce, only asserting this fact in his brief in defense of Defendants' Motion to Dismiss. *See* Pl.'s Resp. to Def.'s Mot. to Dismiss, at 1. However, Defendants do not appear to contest that Mr. Jackson was the title holder of the Property at the time foreclosure proceedings were initiated.

[3] BANA had no involvement in the matters that followed this transfer, including the foreclosure on the Property.

[4] Defendants Seterus and Federal National Mortgage Association ("Fannie Mae") state in their brief that default occurred on January 1, 2013, though they provide no documentation of this. Def. Seterus and Fannie Mae's Mot. to Dismiss, Dkt. # 13, at 3. Plaintiff does not dispute that default occurred, and the exact date of the default is not relevant here.

[5] The letter was mailed to the listed address of the Property. Def. Seterus and Fannie Mae's Mot. to Dismiss, Ex. 5, Dkt. # 13-6.

he was "in default under the terms of [his] loan, but it is not too late to work together to find a better solution." *Id.* The letter continued, stating that

> [w]e want to help you minimize the negative impact of letting your loan continue in delinquency. We must obtain your updated financial information and other required documentation for us to consider a solution. The Borrower Response Package enclosed refers to important documents we need immediately to search for a solution for you.
>
> We will provide you with an answer within approximately 30 days from the date we receive all of the required items . . . . Please keep a copy of the documents provided, as we will not return them to you.

*Id.* A second, nearly identical, letter, dated March 2, 2013, was also sent to Mr. Jackson. *Id.*

Mr. Jackson's estate apparently did not respond to either letter, and on April 8, 2013, Orlans Associates, PC ("Orlans") sent a letter to both Winston Jackson and Trenna Jackson at the Property noting that Seterus had referred the loan to Orlans to begin the foreclosure process. *Id.* The letter noted that "[i]f you have not already, you may provide information to Seterus, Inc. about your situation and in return Seterus, Inc. may use the information to determine whether you qualify for temporary or long-term relief which may include options that allow you to stay in your home (forbearance, repayment plan, modification) . . . ." *Id.*

Three days later, attorney Aliva Arabo, on behalf of Plaintiff, sent a facsimile to Orlans containing several documents, including Mr. Jackson's death certificate, a letter appointing nonparty Sharrina Jackson as Personal

Representative of Mr. Jackson's estate, and a letter of authorization allowing Arabo to represent the estate regarding Mr. Jackson's mortgage.  Pl.'s Resp. to Def.'s Mot. to Dismiss, Exs. B-C, Dkt. # 20-2, 20-3.  The facsimile cover sheet also included the text, "We are requesting a mediation for our client."  *Id.*

The factual record at this point becomes less clear.  Plaintiff alleges in its brief that Mr. Jackson's Estate, "through its attorney Aliva Arabo, submitted all of the necessary financial documents to Orlans for a loan modification for the family of Mr. Jackson."   Pl.'s Resp. to Def.'s Mot. to Dismiss, at 2.  Plaintiff has not, however, put any such documents on the record here, and the complaint itself makes no mention of specific documents.  Defendants Seterus and the Federal National Mortgage Association ("Fannie Mae") maintain that "Plaintiff initially sought a loan modification, but never successfully completed the process" and that "[s]pecifically, the individual applying for the loan modification failed to prove he was the fiduciary or executor of Jackson's estate when he did not produce the requested documents."  Seterus and Fannie Mae's Mot. to Dismiss, Ex. 2, Dkt. # 13-3 at 3-4.  As evidence for this, Seterus and Fannie Mae provide a "Statement of Compliance" made by Orlans attorney Nakia H. Robinson and filed with the Wayne County Register of Deeds on July 9, 2013, stating that "[Jackson's Estate] is not eligible for the protections under [Michigan's loan modification statute] as

he/she has not claimed the subject property as a principal residence]." Def. Seterus and Fannie Mae's Mot. to Dismiss, Ex. 4, Dkt. # 13-5.

On April 16, 2013, MERS assigned the Mortgage to Fannie Mae. *Id.* at Ex. 3, Dkt. # 13-4. With no loan modification process moving forward, Seterus proceeded with a foreclosure by advertisement. On June 3, 2013, it posted a Notice of Foreclosure at the Property, and it published such notice in the Detroit Legal News on May 31, June 7, June 14, and June 21, 2013. *Id.* at Ex. 4, Dkt. # 13-5. The Property was sold to Fannie Mae at a sheriff's sale held on July 11, 2013, for $75,122.44. *Id.* Pursuant to Michigan law, Plaintiff was given six months to redeem the Property for the amount paid at the sheriff's sale -- that redemption period was set to expire on January 11, 2014.

On January 6, 2014, just prior to the expiration of the redemption period, Plaintiff brought this suit in Wayne County Circuit Court. Pl's Compl., Dkt. # 1-2. Plaintiff's complaint asserts four claims for relief, all predicated on the theory that Defendants failed to follow the correct procedure in seeking a possible loan modification for Plaintiff. Plaintiff's complaint makes claims of quiet title (Count I), *id.* ¶ 21; breach of the loan modification requirements in Michigan's foreclosure law in effect at the time of the foreclosure (Counts II and III), *id.* ¶ 22-35; and seeks a preliminary injunction tolling redemption period as well as a temporary

restraining order preventing Defendants from evicting Plaintiff from the Property (Count IV), *id.* ¶ 36-45.

Defendants subsequently removed the action to this Court on March 13, 2014.   Def.'s Removal, Dkt. # 1.   The January 11, 2014 expiration of the redemption period has now passed without Mr. Jackson's estate redeeming the Property.

## III. DISCUSSION

### A.    Rule 12(b)(6) Standard

In deciding a motion brought under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to Plaintiffs and accept all well-pled factual allegations as true.  *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).   To withstand a motion to dismiss, however, a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The factual allegations in the complaint, accepted as true, "must be enough to raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face."  *Id.* at 555, 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

7

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for defendant's conduct." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013).

The Sixth Circuit has emphasized that the "combined effect of *Twombly* and *Iqbal* [is to] require [a] plaintiff to have greater knowledge . . . of factual details in order to draft a 'plausible complaint.'" *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011) (citation omitted). Put another way, complaints must contain "plausible statements as to when, where, in what, or by whom," *Center for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011), in order to avoid merely pleading an "unadorned, the-defendant-unlawfully-harmed me accusation," *Iqbal*, 556 U.S. at 678.


**B.    Plaintiff Has Standing to Bring This Case**

Defendants Seterus and Fannie Mae first argue that because the statutory redemption period has expired and Plaintiff has not redeemed the Property, "Fannie Mae became vested with all right, title, and interest in the Property by operation of law." Def. Seterus and Fannie Mae's Mot. to Dismiss, at 7. Therefore, Seterus and Fannie Mae reason, Plaintiff "lacks standing to challenge the foreclosure sale." *Id.* at 9.

Defendants are correct that under Michigan's foreclosure law, "[u]nless the premises. . . shall be redeemed within the time limited for such redemption . . . , [the sheriff's] deed shall thereupon become operative, and shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage."  M.C.L. § 600.3236. Based on a strict reading of the statute, one might infer that "the homeowner has no legal interest in the property that litigation might vindicate."  *El-Seblani v. IndyMac Mortg. Servs.*, 510 F. App'x 425, 428 (6th Cir. 2013).   And indeed, several recent unpublished decisions from the Michigan Court of Appeals have predicated dismissals of post-redemption-period foreclosure challenges on a lack-of-standing theory.  *Awad v. Gen. Motors Acceptance Corp.*, No. 302692, 2012 WL 1415166, at *4 (Mich. Ct. App. Apr. 24, 2012), *appeal denied*, 493 Mich. 905 (2012) ("Upon the expiration of the redemption period, [Plaintiff] lost all right, title, and interest in the property and, therefore, lost her standing to sue."); *Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342, at *1 (Mich. Ct. App. May 28, 2009) ("Once the redemption period expired, all of plaintiff's rights in and title to the property were extinguished."); *Mission of Love v. Evangelist Hutchinson Ministries*, No. 266219, 2007 WL 1094424, at *5 (Mich. Ct. App. Apr. 12, 2007) ("[D]efendants are correct that, after title vested in [Defendants] pursuant to the foreclosure, it was no longer necessary to resolve the subject matter

9

of plaintiff's lawsuit, i.e., the validity of the warranty deed, because plaintiff no longer had standing.").

These decisions, however, are in tension with established standing principles. "When jurisdiction is premised on diversity of citizenship, a plaintiff must have standing under both Article III and state law in order to maintain a cause of action." *Morell v. Star Taxi*, 343 F. App'x 54, 57 (6th Cir. 2009). Under Article III, a plaintiff has standing when he has sustained an injury that is "concrete and particularized" and "actual or imminent," that injury is "fairly traceable to the challenged action of the defendant," and "it is likely . . . that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000). Clearly such standing is present in a case like this one, where a plaintiff claims injury resulting from an allegedly defective foreclosure procedure. And under Michigan's standing requirements, "a litigant has standing whenever there is a legal cause of action." *Lansing Sch. Educ. Ass'n v. Lansing Bd. of Educ.*, 792 N.W.2d 686, 699 (Mich. 2010). Michigan's courts have provided such a cause of action in this context, allowing plaintiffs to challenge the validity of a foreclosure through summary proceedings, M.C.L. § 600.5714, or by a separate lawsuit, *El-Seblani*, 510 F. App'x at 428. If plaintiffs litigating the validity of a foreclosure after the expiration of the redemption period

meet these basic requirements, as Plaintiff does here, how can these standing principles be squared with the holdings of *Awad*, *Overton*, and *Mission of Love*?

The Sixth Circuit has recently provided a compelling answer. In *El-Seblani*, the court noted that longstanding Michigan state law has held that in cases seeking to set aside a foreclosure following the expiration of the statutory redemption period, plaintiffs face a "stringent" burden, and must allege "fraud or irregularity" that is "relate[d] to the foreclosure procedure itself." *El-Seblani*, 510 F. App'x at 429 (internal quotation marks omitted). Accordingly, the court assessed *Awad*, *Overton*, and *Mission of Love*, and concluded that those cases, despite making superficial references to standing, "[did] not turn on standing doctrine. . . . It is more accurate to say that the 'fraud or irregularity' claims in *Overton, Awad, and Mission of Love* lacked sufficient merit to meet the high standard imposed by Michigan law on claims to set aside a foreclosure sale." *Id.* (internal quotation marks omitted).

Accordingly, the Court likewise finds that Plaintiff has standing in this case, under both Article III and Michigan state law, to bring his claim. A plaintiff who meets both Article III and state standing requirements does not forfeit his standing when the statutory foreclosure redemption period expires.

**C.     Plaintiffs has failed to allege sufficient facts to state a claim under M.C.L. § 600.3205c.**

Though Plaintiff's complaint contains four Counts for relief, all four rely centrally on the allegation that Defendants violated M.C.L. § 600.3205c (2011), a since-repealed statute that governed the loan modification process during foreclosure proceedings.  See Pl.'s Compl. ¶¶ 21 (Count I), 24-27 (Count II), 29-32 (Count III), 37 (Count IV).  Under the statutory scheme in place at the time of this foreclosure, M.C.L. § 600.3205a provided that before commencing a foreclosure by advertisement, the foreclosing party was required to designate a "mortgage servicer" or other agent "as the person to contact and that has the authority to make agreements under sections 3205b and 3205c," which provide for loan modifications.  M.C.L. § 600.3205a(1)(b)-(c) (2011).  Seterus did so, naming Orlans as its agent to negotiate any possible loan modification.  Def. Seterus and Fannie Mae's Mot. to Dismiss, Ex. 4-5, Dkt. # 13-5, 13-6.

M.C.L. § 600.3205b then outlined the initial contact to be made between the borrower and the foreclosing party's agent, requiring the two to meet "to attempt to work out a modification of the mortgage loan," M.C.L. § 600.3205b(3) and providing that "the person designated under section 3205a(1)(c) may request the borrower to provide any documents that are necessary to determine whether the borrower is eligible for a modification under section 3205c," *id.* § 600.3205b(2).

12

The statute was explicit that "[i]f the borrower does not provide the documents requested as required by this subsection, a party entitled to foreclose the mortgage may proceed with the foreclosure." *Id.*

M.C.L. § 600.3205c prescribed the final step, should these initial negotiations be fruitless. It provided that "[i]f a borrower has . . . contacted a person designated under section 3025a(1)(c) under section 3205b but the process has not resulted in an agreement to modify the mortgage loan, the person designated under section 3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies for a loan modification." *Id.* § 600.3205c(1) (footnotes omitted). The statute further outlined a number of features that the loan modification process was required to include. *See id.* Included in these was the provision that foreclosing party's agent was required to provide the borrower with "a copy of any calculations made" in determining whether the borrower qualified for a loan modification, as well as "a copy of the program, process, or guidelines under which the determination . . . was made." *Id.* § 600.3205c(5). Finally, the statute provided a remedy for its violation: "If a mortgage holder or mortgage servicer begins foreclosure proceedings under this chapter in violation of this section, the borrower may file an action in the circuit court for the county where the mortgaged property is situated to convert the foreclosure proceeding to a judicial foreclosure." *Id.* § 600.3205c(8).

13

Plaintiff's complaint alleges several violations of these provisions.  In Count I, Plaintiff alleges broadly that Defendants foreclosed on the Property "without allowing Plaintiff to enter into a Loan Modification . . . in violation of M.C.L. § 600.3205c" and requests that the court "[g]rant[] Plaintiff all legal title to the . . . [P]roperty."  Pl.'s Compl. ¶¶ 21-22.  Counts II and III provides more specific allegations, asserting that Defendants "never sent" the copy of the program or calculations as required by § 600.3205c(5), and "failed to consider and complete the Loan Modification process."  Pl's Compl. ¶¶ 27, 32.  The two Counts make identical assertions of violations of § 600.3205c, and differ only in that Count II asks the Court to grant legal title of the Property to Plaintiff, while Count III asks the Court to convert the foreclosure by advertisement to a judicial foreclosure, pursuant to M.C.L. § 600.3205c(8) (2011).  *Id.* ¶¶ 27, 32, 35.  Count IV requests that, based on the alleged violations outlined above, the Court enter a temporary restraining order enjoining Defendants from evicting Plaintiff and a preliminary injunction tolling the statutory redemption period.[6]

---

[6] At the outset, Defendants note that the M.C.L. § 600.3205c has been repealed. *See* Def. BANA's Mot. to Dismiss, Dkt. # 11, at 16 & 16 n.7; Def. Seterus and Fannie Mae's Mot. to Dismiss, Dkt. # 13, at 13 n.5.  They argue that "because Plaintiff did not file the Complaint until January 6, 2014, and the Michigan legislature repealed M.C.L. 600.3205c effective June 30, 2013," Plaintiff's complaint must be dismissed.  Def. BANA's Mot. to Dismiss, Dkt. # 11, at 16. Plaintiff does not respond to the argument in his brief.  The law appears to be unclear regarding the validity of suits relying on §§ 600.3205a-c where those sections were in force at the time of the foreclosure but repealed before the suit

There are several problems with Plaintiff's complaint that warrant its dismissal.  First, a violation of M.C.L. § 600.3205c and its related sections does not allow for the relief that Plaintiff seeks in Counts I and II: that the Court set aside the foreclosure and grant title to Plaintiff.  At the expiration of the redemption period, Fannie Mae, which lawfully purchased the Property and held legal title to it via the Sheriff's Deed, "was vested with 'all the right, title, and interest' in the Property."  *Evans v. Fed. Nat. Mortg. Ass'n*, No. 12-13116, 2012 WL 5268849, at *6 (E.D. Mich. Oct. 23, 2012) (quoting M.C.L. § 600.3236).  "As such, Plaintiff cannot obtain the relief she seeks, i.e., unravel the foreclosure process, void the sheriff's deed, and quiet title in her name."  *Id.*; *see also Saroki v.*

---

was filed.  Defendants rely on *Hardwick v. HSBC Bank USA, N.A.*, No. 310191, 2013 WL 3815632, at *2 (Mich. Ct. App. July 23, 2013), which held that "neither the circuit court nor this Court can fashion the relief that plaintiffs seek" because of repeal of the statutes, even though they were in force at the time of the foreclosure.  Other cases, however, reach an apparently contradictory result.  *See Mayo v. Seterus, Inc.*, No. 14-CV-10705, 2014 WL 2804290, at *1 (E.D. Mich. June 20, 2014) (applying § 3205c in case brought after its repeal); *Maraulo v. CitiMortgage, Inc.*, No. 12-CV-10250, 2013 WL 530944, at *9 (E.D. Mich. Feb. 11, 2013) (finding § 3205c applicable "because the foreclosure notice was published and mailed to Plaintiffs in August 2011," prior to the repeal of the section); *Qadeer v. Bank of Am., N.A.*, No. 12-14310, 2013 WL 424776, at *4 (E.D. Mich. Feb. 4, 2013) (applying § 3205c because "at the time the [foreclosure] notice in this case was sent, the statutory loan modification process was still in effect").  But because Plaintiff's complaint fails to state a claim on which relief can be granted, "it is unnecessary to examine whether § 3205c's subsequent repeal moots this claim." *Thill v. Ocwen Loan Servicing, LLC*, No. 13-CV-14151, 2014 WL 1274080, at *2 n.2 (E.D. Mich. Mar. 31, 2014); *see also Dickerson v. Cenlar FSB*, No. 14-CV-11359, 2014 WL 2894892, at *2 n.1 (E.D. Mich. June 26, 2014) (same).

*Bank of New York Mellon*, No. 12-13961, 2012 WL 5379169, at \*6 (E.D. Mich. Oct. 31, 2012) ("[C]ourts in the Eastern District of Michigan uniformly have held that a violation of Section 600.3205c is insufficient to justify setting aside a completed foreclosure sale."). Instead, § 600.3205c provided a specific, exclusive remedy for its violation: "the borrower may file an action in the circuit court for the county where the mortgaged property is situated to convert the foreclosure proceeding to a judicial foreclosure." M.C.L. § 600.3205c(8) (2011); *see also Saroki*, 2012 WL 5379169, at \*6; *Adams v. Wells Fargo Bank, N.A.*, No. 11-10150, 2011 WL 3500990, at \*4 (E.D. Mich. Aug. 10, 2011) ("Even if Plaintiff is correct about Defendant's failure to agree to a modification, he failed to show that he is entitled to the requested relief. The plain language of § 600.3205c(8) limits his relief. It does not authorize the Court to set aside the foreclosure."). Accordingly, Counts I and II, which seek to overturn the foreclosure based on alleged violations of § 600.3205c, must fail.[7]

Count III, however, does seek to convert the foreclosure by advertisement to a judicial foreclosure pursuant to M.C.L. § 600.3205c(8). The Sixth Circuit has

---

[7] Further, as BANA persuasively argues in its brief, none of the Counts in Plaintiff's complaint allege any wrongdoing on the part of BANA. Plaintiff's allegations all center on duties that Plaintiff claims were owed to him after he defaulted on the loan in early 2013. But BANA transferred servicing of the loan to Seterus on October 1, 2011. Def. BANA's Mot. to Dismiss, Ex. C, Dkt. # 11-4. Clearly, BANA owed no duty to Plaintiff at the time the foreclosure was initiated.

16

made explicit that such relief can only be sought prior to completion of the foreclosure:

> Pursuant to Mich. Comp. Laws § 600.3205c(8), the sole remedy for a mortgage holder's failure to follow the loan modification process is converting the foreclosure by advertisement to a judicial foreclosure. That remedy, however, can only apply when the foreclosure itself is still pending.

*Holliday v. Wells Fargo Bank, NA*, 569 F. App'x 366, 370 (6th Cir. 2014) (citations omitted); *see also Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 756 (6th Cir. 2012) ("[Plaintiffs] appear to have missed the boat regarding the applicability of [§ 600.3205c(8)] which, when triggered, allows plaintiffs to enjoin a foreclosure by advertisement and convert it to a judicial foreclosure: they brought this action after the foreclosure sale occurred, and so there is no foreclosure to enjoin or convert"); *Rugiero v. Flagstar Bank, FSB*, No. 11-CV-12312, 2013 WL 1316910, at *8 (E.D. Mich. Mar. 29, 2013) ("[T]he remedy made available solely by Mich. Comp. Laws § 600.3205c(8), must be exercised before the foreclosure sale occurs."); *Butts v. JPMorgan Chase Bank, N.A.*, No. 12-CV-13282, 2012 WL 6194228, at *6 (E.D. Mich. Dec. 12, 2012) (finding that "[t]he statute's plain language" prevents borrowers from setting aside a completed foreclosure); *but see Bobel v. Met Life Home Loans*, No. 11-CV-10574, 2012 WL 5823759, at *2 (E.D. Mich. Mar. 21, 2012) (finding that "there is no language in the statute that would bar setting aside a foreclosure sale that has taken place").

17

In this case, Plaintiff's request to have the foreclosure by advertisement converted to a judicial foreclosure was filed on January 6, 2014: *after* the sheriff's sale (which occurred on June 11, 2013) but *before* the expiration of the redemption period (which expired on January 11, 2014). The caselaw discussed above does not make clear which event -- the sheriff's sale or the expiration of the redemption period -- serves as the cutoff for requesting a conversion to judicial foreclosure. *See Smith*, 485 F. App'x at 756 (holding that § 3205c(8) cannot be applied "after the *foreclosure sale occurred*"); *Holliday*, 569 F. App'x at 370 (holding that § 3205c(8) "can only apply when the foreclosure itself is still *pending*"). Presuming, for the moment, that a foreclosure sale is still "pending" until the expiration of the statutory redemption period for the purposes of § 3205c(8), the redemption period has still passed without any attempt from Plaintiff to redeem. And both this Court and Michigan state courts have repeatedly held that merely filing a suit prior to the expiration of the redemption period does not automatically toll the period. *E.g.*, *Whitehead v. Fed. Nat. Mortg. Ass'n*, No. 12-CV-13840, 2013 WL 5353050, at *4 (E.D. Mich. Sept. 24, 2013); *Moriarity v. BNC Mortg., Inc.*, No. 10-13860, 2010 WL 5173830, at * 2 (E.D. Mich. Dec.15, 2010); *Nafso v. Wells Fargo Bank, N.A.*, No. 11-10478, 2011 WL 1575372, at *2-3 (E.D. Mich. Apr.26, 2011); *Mitan v. Fed. Home Loan Mtg. Corp.*, No. 10-13286, 2011 WL 4837502, at * 2 (E.D. Mich. Sept. 22, 2011); *Overton*, 2009 WL 1507342, at *1. But further

18

complicating matters is the fact that, unlike those cases, Plaintiff in this case also requested in his complaint "[a] preliminary injunction staying and tolling the expiration of the redemption period." Pl.'s Compl., Dkt. # 1-2, ¶ 45.

The Court need not consider, however, whether Plaintiff's request for a preliminary injunction preserves his ability to obtain relief under § 600.3205c(8), because his claim for relief under that section fails on the merits.[8] In order to avail himself of the remedy allowed for in § 600.3205c(8), in addition to showing that Defendants violated the duties imposed by § 600.3205c and related provisions, Plaintiff must demonstrate that he was prejudiced by that violation. In other words, he must "allege[] facts showing that [he] qualified for a loan modification under M.C.L. § 600.3205a et seq." *Dingman v. OneWest Bank, FSB*, 859 F. Supp. 2d 912, 923 (E.D. Mich. 2012); *see also Henson v. Bank of Am., N.A.*, 979 F. Supp.

---

[8] The Court notes that there are countervailing policy interests in determining whether to allow a motion for a preliminary injunction filed in a foreclosure complaint (as Plaintiff has done here) to be used to extend the statutory redemption period. On the one hand, courts have repeatedly structured rules around the need for timely resolution of foreclosure actions and to discourage unmeritorious claims from being filed simply to delay eviction. Allowing a motion for a preliminary injunction to serve to automatically toll the redemption period would clearly encourage such suits, and would undermine the clarity of property interests required in both the law and the proper ordering of property rights. On the other hand, some process must be in place to protect meritorious claims, however few, from being fully forfeited due to expiration of the redemption period. The Court notes that in some cases, even a diligent Plaintiff's claim that is filed early in the redemption period may not be decided before expiration of the period, and dismissing that diligent Plaintiff's claim on the basis of the redemption period's expiration would surely not be equitable.

19

2d 763, 766 (E.D. Mich. 2013) ("Based on the plain language of the statute, to state a claim under section 3205c(8), the plaintiff must plead and prove that . . . the borrower is eligible for a loan modification under the related statutory provisions."); *Mitan,* 2013 WL 5913660, at *5; *cf. Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 361 (6th Cir. 2013) (requiring a showing of prejudice to demonstrate a defect in foreclosure procedure under M.C.L. § 600.3204).

Even assuming that Defendants initiated foreclosure by advertisement proceedings without carrying out the duties imposed by § 600.3205c and related provisions, [9] Plaintiff has not demonstrated that such a violation caused him prejudice. Instead, Plaintiff merely alleges that his heirs "will suffer irreparable harm in that they will be evicted from their home." Pl.'s Coml. ¶ 14, see also *id.* ¶ 38 ("The irreparable harm is obvious."). But that harm could very well have still

---

[9] Whether this is the case is, at this point, highly questionable. Defendants claim that after initially contacting Plaintiff regarding a potential loan modification, Plaintiff "failed to prove he was the fiduciary or executor of Jackson's estate when he did not produce the requested documents." Seterus and Fannie Mae's Mot. to Dismiss, Dkt. # 13, Dkt. # 20, at 4. Plaintiff, in turn, claims that "through its attorney Aliva Arabo, [Plaintiff's estate] submitted all of the necessary financial documents to Orlans for a loan modification for the family of Mr. Jackson." Pl.'s Resp. to Def.'s Mot. to Dismiss, at 2. But critically, Plaintiff has not produced any of these documents. Still, for the purposes of a motion under Federal Rule of Civil Procedure 12(b)(6), the court must accept all of Plaintiff's well-pled factual allegations as true, and thus the Court accordingly presumes that Plaintiff did send the requested documents.

20

occurred even if Defendants had followed § 600.3205c to the letter. Nowhere in the complaint does Plaintiff allege that his estate would qualify for a loan modification. In his brief in response to Defendants' Motion to Dismiss, Plaintiff does state that "at all times since Winston Jackson's death, Plaintiff's heirs have remained ready, willing, and able to negotiate a modification of the loan and, upon information and belief, qualify for such a modification." Pl.'s Resp. to Def.'s Mot. to Dismiss, Dkt. # 20, at 11. But Plaintiff provides no allegation of specific facts to support this blanket assertion. "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Plaintiff has failed to sufficiently allege a violation that can support relief under M.C.L. § 3205c(8), and thus Defendants are entitled to dismissal of Count III. And because Plaintiff's claims fail on the merits, his request for a preliminary injunction in Count IV must also fail.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Dkt. # 11, 13) is GRANTED and Plaintiff's Complaint is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**


Dated:  December 15, 2014          s/Gerald E. Rosen
                                   Chief, Judge, United States District Court


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on December 15, 2014, by electronic and/or ordinary mail.

                                   s/Julie Owens
                                   Case Manager, (313) 234-5135

22